BARTLETT *v.* BATTEMA.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ACCOUNTING—FRAUD.

In suit for accounting wherein trial court found plaintiffs had not sustained charges of fraud and misrepresentation and they did not appeal, the issue of fraud and misrepresentation was not before Supreme Court on defendant's appeal.

2. ACCOUNTING—OIL LEASE—COMMON FUND.

Moneys received from the sale of the fractional working interests in an oil lease upon which a well was being drilled did not constitute a common fund as to which defendants were required to account to plaintiffs where receipts and assignments gave plaintiffs a right to participate in well being drilled as well as others on same lease to be drilled in the future if they paid proportionate share of cost of drilling but record does not disclose purchasers were asked or expected to pay additional assessments for completion of well or that they had been promised a refund.

3. MINES AND MINERALS—OIL LEASE—CONTRACTS.

Receipts and assignments executed by defendant owners of working interest in oil lease in connection with sale of fractional working interests and which gave purchasers a right to participate in well being drilled and other wells, if drilled, defined the purchasers' rights.

4. SAME—OWNERSHIP OF UNDIVIDED INTERESTS—PARTNERSHIP.

Mere ownership of an undivided interest in an oil and gas lease does not make one a partner with other owners.

5. SAME—MINING PARTNERSHIP.

In order to constitute a mining partnership, the parties must cooperate in developing the lease, each agreeing to pay his part of the expenses and to share in the profits or losses.

6. ACCOUNTING—WELL DRILLER—UNDIVIDED FRACTIONAL WORKING INTERESTS.

Defendant well driller who fully equipped oil well and brought in what first appeared to be a good producing well and whose

contractual relations were solely with other defendants was not required to account to purchasers of undivided fractional working interests in lease on which well was drilled.

7. SAME—PURCHASERS OF FRACTIONAL WORKING INTERESTS IN OIL LEASE.

Purchasers of fractional working interests in oil well then being drilled were not entitled to accounting as to fund created by sale of their interests by defendants where all parties knew they were gambling in that if a producing well came in their lease would be valuable; if well were not a producer, lease would not be valuable; and fund created was not a common fund.

Appeal from Kalamazoo; Verdier (Leonard D.), J., presiding: Submitted October 15, 1941. (Docket No. 58, Calendar No. 41,159.) Decided January 5, 1942.

Bill by Julia Bartlett and others against John P. Battema and others for an accounting, determination of interests in an oil well, and other relief. Decree for plaintiffs. Defendants appeal. Reversed and bill dismissed.

*Arthur R. Sherk (Starr & Starr,* of counsel), for defendant Edward B. Strom.

*John H. Bloem,* for defendant Peter Luyendyk.

SHARPE, J.   This is a chancery case for an accounting growing out of the operations connected with the drilling of an oil well on what is known as the Berens lease.  Plaintiffs, owners of interests in the Berens lease and well, filed a bill of complaint against the following defendants: John P. Battema, Arthur J. Boeve, Peter Luyendyk, Sam Luyendyk, John Luyendyk, John R. Cox, and Edward B. Strom, asking that the defendants account for the money re-

ceived, that the fractional interests of the parties be determined, that a receiver be appointed, and that defendants be restrained from transferring any interest in the well and lease.

In the summer of 1937, defendants Battema, Boeve, Peter and Sam Luyendyk, and others were financially interested in an oil lease known as the Bos lease and had dealings with one John G. Turner to drill the well. After receiving some money therefor, Turner defaulted. In November or December, 1937, Turner sold 10/32 interests in an oil and gas mining lease, known as the Berens lease, on land in Allegan county to some of the defendants and others and conveyed a mineral deed thereto to Battema. About the same time, Turner approached defendants John R. Cox and Edward B. Strom, who had been interested in the production and drilling of oil wells, and represented to them that he had the Berens lease. Turner, Strom and Cox entered into an agreement whereby Strom and Cox, as partners, were to receive an overriding royalty of 1/16 interest and an assignment of 22/32 working interests for drilling the well.

It later developed that the Berens lease was in the name of Lydia Atkinson. There was a meeting of Battema, Cox, Strom, Turner, John Luyendyk, who seems to have represented his brothers Peter and Sam, and William Leahy, son of Lydia Atkinson. At this meeting it was agreed that if Battema would destroy the mineral deed on the Berens lease which he got from Turner, Leahy would get his mother's consent to make a conveyance of this lease to Cox and Strom.

On January 6, 1938, Lydia Atkinson conveyed all of her interest in the Berens lease to Cox, reserving to herself 1/16 overriding royalty. On the same day, a written agreement was entered into between Cox and Battema that 15/32 of the working interests were

to be assigned to defendant Battema. These interests were to compensate those interested parties who had suffered by the default of Turner in the above-mentioned dealings. The other 17/32 working interests and 1/16 overriding royalty were to be the property of Cox and Strom. It was also agreed that Cox and Strom would drill a well on this lease to the Traverse formation for $7,000, the money to be raised by the sale of 7/32 working interests of the 17/32 working interests of Cox and Strom. Shortly after the above agreement was entered into, fractional interests from the 7/32 working interests were sold to some of the plaintiffs, the proceeds being turned over to Cox and Strom, and the drilling operations commenced.

About the middle of March, 1938, Cox and Strom dissolved partnership. At this time Cox and Strom had received about $4,000 for the drilling. In the settlement, Cox retained 3/32 working interests and the 1/16 overriding royalty out of the 10/32 interests originally owned by Cox and Strom. After a short time, during which Strom carried on drilling operations, a meeting was held with John, Peter and Sam Luyendyk, Boeve, Battema and Strom present at which time the previous drilling agreement was abandoned and a new drilling agreement was made whereby Strom turned over for sale 5/32 of the working interests received in settlement with Cox to be sold (in addition to the remaining 3/32 working interests originally agreed to be sold) and Strom was to be paid to complete the drilling as well as install a pump and the ground equipment for the reception of the oil. Strom estimated that the cost would be about $8,000 more.

Under both the partnership and Strom individually, as the drilling progressed each time that $1,000 was paid to the driller, a 1/32 working interest

was assigned by the driller to Battema. As fractional interests were sold by Battema and associates, the purchaser was given a receipt, a copy of which reads as follows:

"In consideration of the sum of $1,000 cash in hand—receipt of which is hereby acknowledged—I do hereby agree—to assign—set over—and transfer to Dirk J. and Cora J. Scholten 1/32 working interest in and to oil well being drilled on 22-foot driveway of John G. Berens owner in the following described property: * * *

"Said assignment to cover working interests in and to oil and gas lease given by John G. Berens to Lydia Atkinson of North Muskegon, Michigan.

"Said assignment also gives above named right to participate in other wells to be drilled on said lease if and when above named chooses to pay his or her proportionate share of moneys necessary to drill said well."

The above receipt was followed by an assignment, the material language of which reads as follows:

"Whereas, the said John P. Battema, hereinafter referred to as the first party, is desirous of selling an undivided 1/64 working interest in and to a 6/8 working interest in and to the oil and gas mining lease on said described premises and L. E. Powell of Kalamazoo, Michigan, hereinafter referred to as second party, is desirous of buying an undivided 1/64 working interest in and to the 6/8 working interest in and to the said oil and gas mining lease.

"Now, therefore, for and in consideration of the sum of $1 and other valuable considerations, receipt of which is hereby acknowledged together with the conditions, covenants and agreements hereinafter contained and set forth and to be performed and kept by the parties hereto, their successors and assigns, the said party of the first part does hereby assign, set over, transfer and convey unto the second party, his successors and assigns, an undivided 1/64 working

interest in and to 6/8 working interest in the oil and gas mining lease aforesaid and all the rights thereunder or incident thereto including the well now being drilled on said described premises exclusive of the rig and other equipment used in drilling said well. * * *

"Be it also understood, however, that if and when said party of the first part desires to drill more wells on said lease herein described said party of the second part has full right to participate in said wells according to the amount of interests he holds in said lease if and when the party of the second part be willing to pay his proportionate share of money required to drill said wells. If, however, party of the second part chooses not to pay the required sum of moneys his interest in said lease shall be null and void excepting the interest he already has in the well that has been drilled and which has been designated as Berens Oil Well No. 1."

It is conceded that the drilling of the well was completed. Plaintiffs filed a bill of complaint asking for an accounting and that a receiver be appointed. Defendant John R. Cox defaulted; and, before the trial, the case was dismissed as to John Luyendyk. Upon hearing on the order to show cause, a temporary receiver was appointed to operate the well. At the close of plaintiffs' proofs, motions to dismiss the bill of complaint were made by each defendant and granted as to defendants Sam Luyendyk and Arthur J. Boeve.

The trial court in an opinion held that the moneys received from the sale of fractional interests was a common fund that belonged to all of the investors; and that whoever had charge of such fund stood in a fiduciary relationship to those that furnished it; and said:

"As against the others I am not saying that there is any case against them. I am not satisfied from this

record whether there is or whether there isn't, but I do say the right should be preserved to the trustee to pursue any remedies that he thinks he may have against the remaining defendants.''

Defendants Battema, Peter Luyendyk and Strom appeal. Defendants Battema and Strom contend that plaintiffs bought a fractional interest in and to the lease with a well to be put down; that the well was completed; that each and every plaintiff received exactly what he had paid for and what he was entitled to receive; and that plaintiffs had no right, title, or interest in and to the proceeds of the sale of the fractional shares of said lease. Strom also contends that he had no contractual relations whatever with any of the plaintiffs; and that he did not stand in a fiduciary relationship with the plaintiffs. Defendant Peter Luyendyk contends that he was not in a fiduciary relationship with any of the purchasers; that, assuming a fiduciary relationship, he rendered a complete accounting; and that he is not liable under the statute of frauds for any debt, default or misdoings of any other defendant.

It is to be noted that the trial court did not make any finding of fraud; in fact he dismissed plaintiffs' bill of complaint insofar as it related to charges of fraud and misrepresentation and in view of the fact that plaintiffs have not appealed, the issue of fraud and misrepresentation is not before this court. See *Stephenson* v. *Golden,* 279 Mich. 710.

We do not agree with the trial court's finding that the moneys received from the sale of the fractional interests was a common fund. The facts in the case at bar show that Cox and Strom and later Strom individually had full responsibility and control of the drilling of the well. The record does not indicate that any of the plaintiffs were asked or expected to pay additional assessments for the completion of

the well. There is some testimony that Battema and Peter Luyendyk used personal funds to pay labor claims in the completion of the well. We do not find that there was any promise of a refund to any of the interest purchasers. Edgar Minnard, the only plaintiff to testify, said:

"*The Court:* The question, witness—he asked you whether you expected, from anything said, that there was going to be any refund of your money in case it didn't cost that much to drill a well?
"*A.* He didn't say that.
"*Q.* Nobody said that to you, did they?
"*A.* Not that there was going to be a refund, no."

Under the facts shown in this case, the receipts and assignments defined the rights of plaintiffs. Such written instruments gave the purchasers the right to participate in the well being put down and, if other wells were drilled, to participate in those wells, if they chose to do so, by paying their proportionate share of drilling those additional wells.

We think the law is well settled that mere ownership of an undivided interest in an oil and gas lease does not make one a partner with the others.

In *Billingsley* v. *Parmenter,* 181 Okla. 315 (73 Pac. [2d] 869), Parmenter and Freeman owned a block of oil and gas leases. Holland, cross-petitioner, worked in drilling a well on the leased land and sought to foreclose a labor lien and to obtain a personal judgment against Parmenter, Freeman and Billingsley. As to a claim that Parmenter and Freeman sold Billingsley a one-third interest in the well and that Billingsley was a partner, the court said (p. 318):

"This contract, as allegedly modified by a subsequent oral agreement, provided that Billingsley should have a one-third interest in the lease and the

well in question. That was the extent of the contract. There was no other evidence from which to draw the conclusion that Billingsley was a mining partner or joint. adventurer. He assumed no part in the management of the venture and had nothing to do with the operations; purchased none of the material and employed none of the labor. His contract as allegedly modified could have created no more than a cotenancy between him and Parmenter and Freeman. Parmenter and Freeman merely agreed to give him an interest in the well and lease for a specified sum. * * *

"To agree to assign an interest for a specified sum, in the absence of further circumstances indicating a mining partnership, cannot create such partnership. Billingsley paid his money for an interest in the lease, not for the operating expense. Parmenter and Freeman used the money for the latter purpose."

In *McAnally* v. *Cochran,* 170 Okla. 368 (46 Pac. [2d] 955), the court said:

"As to what parties must do in order to create the relationship of a mining partnership, this court in the case of *Gillespie* v. *Shufflin,* 91 Okla. 72 (216 Pac. 132), held:

" 'In order to constitute a mining partnership, the parties must cooperate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses.' * * *

"The mere holding of an interest in an oil and gas lease and leasehold estate with other cotenants and having knowledge that a well was being drilled thereon by one or more of the cotenants does not constitute 'cooperation' as contemplated by the authorities herein cited."

See, also, *Wammack* v. *Jones,* 103 Okla. 1 (229 Pac. 159).

The record shows that Strom fully equipped the well and brought in what at first appeared to be a

good producing well. His contractual relations were with Battema and his associates. He is not a holder of any interest in the well and he may not be charged with an accounting to plaintiffs.

As to defendants Battema and Luyendyk, we think the case is controlled by what we said in *Lindemulder* v. *Shoup,* 258 Mich. 679, 681:

"Both the plaintiff and the defendants knew they were gambling; if the territory became proven territory, their lease would be valuable, and they would undoubtedly make a handsome profit; if the wells that were being sunk in the vicinity proved not to be productive, then the lease would not be valuable. The wells being sunk in the immediate vicinity of this land were not producing wells. Plaintiff lost his money along with the others who embarked in the enterprise, and for this loss, apparently, no one else is to blame."

The bill of complaint is dismissed. Appellants may recover costs.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, and BUSHNELL, JJ., concurred. STARR, J., did not sit.