Application of MORAN.

No. 32719.   Nov. 3, 1948.

Rehearing Denied Dec. 14, 1948.

*200 P. 2d 758.*

Short & Pierson, of Oklahoma City, for appellant W. J. Moran.

Glen W. Clark, R. E. Cullison, and Robert R. McCracken, all of Oklahoma City, for appellant Cities Service Gas Company.

Mac Q. Williamson, Atty. Gen., and Floyd Green, Conservation Atty., and John Blanton, Asst. Conservation Atty., for appellee Corporation Commission.

Earl Pruet, of Oklahoma City, for appellees Peerless Oil & Gas Company and Frank Parkes.

LUTTRELL, J. On April 27, 1946, W. J. Moran, a royalty owner under certain producing wells in the Hugoton gas field, filed with the Corporation Commission an application asking the commission to revoke and cancel certain allowables theretofore granted by the commission to the owners of gas wells in the Hugoton field which had no pipe line connections. The application was based upon the contention of appellant that the allowable production granted to such wells was erroneously granted because of the failure of the owners of said wells to comply with the rules of the Corporation Commission governing such matters, and that such allowables were building up an underage on said wells, which was deducted from the aggregate allowable granted to the field to the damage and injury of the appellant. Notice was duly given of a hearing upon the application. At such hearing the Cities Service Gas Company joined in the application, and Peerless Oil & Gas Company, Frank Parkes and the Conservation Department of the Corporation Commission resisted the application. After hearing the evidence the commission denied the application, and the appellants appeal.

At the outset we are confronted with a motion to dismiss filed by the State of Oklahoma, the Corporation Commission of the State of Oklahoma, Peerless Oil & Gas Company and Frank Parkes, appellees herein. The ground of the motion is that although notice of appeal was duly given and the petition in error filed in this court in due time, no transcript was attached to the petition in error, and that for this reason the appeal was not taken within 60 days from the date of the final order of the commission as provided by 52 O. S. 1941 §113. From the record it appears that upon a showing made in this court by appellants that the Corporation Commission would be unable to furnish a transcript of the record within the 60-day period within which an appeal might be taken as provided by section 113, supra, this court granted appellants an extension of 60 days' additional time within which to supply a transcript of the record, and that the record was filed in the office of the clerk of this court within the additional 60-day period.

We find nothing in our statutes or decisions negativing the right of this court in such situations to extend the time within which the transcript may

be filed where notice of appeal was duly given, the petition in error duly filed, and a showing made that due to no fault on the part of appellant the record could not be filed within the short time prescribed by statute for the taking of such appeals. Appeals from the Corporation Commission usually involve matters of public interest, and the fixed rules applied in cases of ordinary civil appeals from judgments of the courts should not be applied to such appeals. Section 113 provides that said appeals are to be taken in the s a m e manner as appeals affecting transportation and transmission companies, and article 9, sec. 20, of the Constitution, governing appeals in such cases, provides that the Supreme Court may provide by rule for proceedings in the matter of appeals in any particular in which the existing rules of law are inapplicable. This is sufficient, in our judgment, to invest this court with a certain amount of discretion in connection with the taking and perfecting of such appeals.

We think that under the authority granted by the Constitution, this court had power, upon the showing made, to grant the extension of time, and that in such case the failure to file the transcript within the original 60-day period was not fatal to the appeal. The motion to dismiss is denied.

On the merits the sole question presented, as we view the case, is whether the granting of allowable production to the five wells in controversy was contrary to general order No. 17,867, promulgated by the commission to govern the allocation of production to wells in the Hugoton field, and the taking of gas from said field. The provision of said order dealing with the allocation of allowable gas production on said field is section 4 (b), which reads as follows:

"4 (b) In determining the units herein prescribed, for the purpose of allocation of gas production, only developed acreage shall be considered; and developed acreage shall mean any unit on which there is a producing well hav-ing a pipeline connection or other market outlet or the owner or operator of which is ready, willing, and able to permit or to make a connection and dispose of his gas at the going price in the field. If the operator or owner, by affidavit or otherwise, shows to the Conservation Officer that he is ready, willing, and able to permit or to make a connection and the pipe-line or other outlet refuses to take his gas, then his acreage shall be deemed developed acreage under this order. Before any unconnected well shall be granted an allowable, the operator shall tender its gas production to a purchaser by registered mail, and copy of said letter of tender shall be sent to the Conservation Officer. If at the end of thirty days no connection has been made and the Conservation Officer is satisfied that the operator has made such tender in good faith, then the Conservation Officer shall fix an allowable for said well to commence at the end of such thirty-day period; provided further, when there is no dispute between the seller and the purchaser, the producer or the purchaser shall file an affidavit on a form prescribed by the Commission, showing the date the well was connected and actual production was commenced, on which date the allowable shall be fixed for said well."

This order was promulgated on May 31, 1945.

From the evidence it appears that after this order had been promulgated by the commission, Peerless Oil & Gas Company, the lessee of the leases upon which the five wells were located, evidently in an attempt to comply with the provisions of the above-quoted section, tendered to the purchasers of gas in said field the gas produced from said wells, or such portion thereof as should be, by the commission, allocated as allowable production. A copy of each tender so made was filed with the Conservation Officer of the Commission. The tender on one well was made to the Cabot Carbon Company at the price of five cents per thousand cubic feet, which price had been theretofore found by the commission, in an order dated November 24, 1944, to be the going price of gas in the Hugoton field in Texas County, Okla., at that time. The

tenders on the other four wells were at a specified price of five cents per thousand cubic feet on the production from three of said wells, and the price of six cents per thousand cubic feet on the other well. Each of the four tenders last mentioned contained the further provision that in the event of failure to agree upon a price Peerless Oil & Gas Company would sell the gas "at such price as may be fixed by the Corporation Commission of the State of Oklahoma". Upon the filing of these tenders, or copies thereof, with the Conservation Officer, he granted to each well a monthly allowable of the production of gas from the Hugoton field. So far as the record shows no purchasing company offered to purchase gas from any of the five wells, or made any attempt to deal with Peerless Oil & Gas Company in an effort to purchase the gas from any of said wells, except that on the tender of gas from one well Cities Service Gas Company advised that it was purchasing gas under contracts to endure for the life of the respective leases, or the production thereof, and that if Peerless would be interested in making such contract its representatives should call upon one of the vice-presidents of Cities Service, who might be able to agree upon the equitable purchasing of said gas. In so far as the record shows the representatives of the two companies never got together or attempted to formulate any contract governing the taking of gas from said wells.

At the hearing before the commission a witness produced by Cities Service Gas Company testified that the average going price in the Hugoton field was four cents per thousand cubic feet, with some variations, and that considering all prices paid for gas produced the weighted average was 4.1 cents per thousand cubic feet.

All parties apparently concede that the Hugoton gas field is a common source of supply, and that the Corporation Commission, acting under authority of 52 O. S. 1941 §§232 and 233, had jurisdiction to issue general order No.

17,867 in order to insure ratable taking of gas from that field. See Republic Natural Gas Co. v. State, 198 Okla. 350, 180 P. 2d 1009. Appellants contend, however, that the prices specified in the tenders made by Peerless were in excess of the going price of gas in the field, as testified by its witness, and that, therefore, by the terms of the order, Peerless was not entitled to allowables on said wells. Appellants insist that in such case the Conservation Officer, under the express terms of the order, had no power or right to make the finding that the acreage of Peerless should be classified as developed acreage. Appellees contend that the tenders were a substantial compliance with the above-quoted provision of the order, and that they showed on their face that they were made in good faith.

We think a fair interpretation of the above-quoted provision of order No. 17,-867 is that in order to have its acreage considered, or held, to be producing acreage, Peerless was required to show by its tenders that it was, in good faith, willing to sell the gas from its wells at the going price in the field. "Going price" has been held to be substantially the same as "market price", or "current price". Hoff v. Lodi Canning Co., 51 Cal. App. 299, 196 P. 779. The question presented for our determination, therefore, is whether the tenders made by Peerless sufficiently evidenced its willingness in good faith to sell the gas from said wells at the going price. If they were sufficient to evidence such intention, the Conservation Officer was justified in granting the allowables, and the action of the commission in sustaining the granting of such allowables was not erroneous.

Under the terms of section 4 (b), supra, when a copy of a tender of gas was received by the Conservation Officer he was justified in granting an allowable to the wells on which such tenders were made under two conditions: (1) If the tenders offered the gas to the purchaser at a price which was known to the Conservation Officer to be the going price in the field, or in that part

of the field where the wells were located, or (2) if the going price was not known by the Conservation Officer, but if, from the terms of the tenders, he was reasonably satisfied that the tenders evidenced a willingness on the part of the producer to sell the gas at the going price, and were made in good faith. The Conservation Officer testified that he did not know the going price of gas in the Hugoton field. Therefore, his granting of the allowables was pursuant to condition No. 2 above stated, that is, that in his judgment the tenders evidenced a willingness on the part of the producer to sell his gas for the going price in the field, and were made in good faith.

There is no showing in the record that Peerless Oil & Gas Company was advised as to the going price in the whole field, or that it could ascertain such price by any means other than an extended investigation of the prices paid in the various parts of the field. There was no evidence as to the going price laid in the locality where the five wells in controversy were situated. While no one expressly testified upon that point, it is a fair inference that the prices specified in the tenders were the prices which Peerless considered, or believed, were the going prices for gas in the vicinity in which its wells were located. The provision in its tenders that if the parties could not agree upon a price, the price could be determined by the Corporation Commission was, we think, sufficient evidence of good faith on its part in making the tenders, and showed a willingness to sell at the going price, since in the event of disagreement either party could apply to the commission and request it to find the going price in that vicinity. The Conservation Officer was justified in finding that Peerless was willing to sell at the going price, and that the tenders were made in good faith.

In the instant case the testimony as to the going price was not produced by appellants for the purpose of enabling the commission to fix a price, or to find the going price which a purchaser would be required to pay for gas taken by it from any of the five wells, but such evidence was introduced solely for the purpose of questioning the good faith of Peerless in making the tenders, and the validity of the allowable based thereon. There is nothing in the record to indicate that had Peerless tendered the gas from the five wells at a price less than the price suggested in the tenders, the production therefrom would have been purchased by any purchaser of gas in the field.

In view of the above it follows that the Corporation Commission did not err in refusing to grant the application to cancel the allowables.

The order of the commission is affirmed.

HURST, C. J., DAVISON, V. C. J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.