**Ted R. FISHER, Plaintiff in Error,**

v.

**The SUPERIOR OIL CO. OF CALIFORNIA, a Corporation, et al., Defendants in Error.**

**No. 39676.**

Supreme Court of Oklahoma.

March 17, 1964.

Thurman Hurst, Pawnee, Gus Rinehart, Oklahoma City, Ed Montgomery, Fairview, C. Lawrence Elder, Johnson, Fisher & LeDonne, Ted R. Fisher, Tulsa, pro se, for plaintiff in error.

Warren M. Sparks, Tulsa, for defendant in error Warren Petroleum Corp.

Q. L. Lupardus, Tulsa, for defendant in error Oklahoma Natural Gas Co.

Brown & Brown, Paul Brown, Oklahoma City, for defendant in error Livingston Oil Co.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, for defendant in error Superior Oil Co.

Tomerlin & High, Granville Tomerlin, Oklahoma City, for defendants in error Scannell, Fuller, Schapiro and Boehs.

Merton M. Bulla, Baker H. Melone, Oklahoma City, for defendants in error Tulsledo Oil Co.

Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, C. Harold Thweatt, Miller, Melone, Wilson, Adams & Rogers, Baker H. Melone, Oklahoma City, Smith, Inglish & Gray, Morris G. Gray, Okmulgee, Randall G. West, Tulsa, for other defendants in error (common brief).

JACKSON, Justice.

■ An attorney, Ted R. Fisher, as plaintiff, brought this action against numerous defendants who own leases and mineral interest in the Ringwood Oil Field in Major County, Oklahoma. The action was brought upon the equitable principle that a court of equity will order an allowance of attorney fees to an attorney who at his own expense has maintained a successful action and created a fund in which others may share with his clients. The ultimate question for our decision is whether the trial court erred in refusing to direct the payment of attorney fees to the plaintiff in this case.

The rule, or equitable principle, upon which plaintiff seeks recovery is stated in 14 Am.Jur., Costs, § 74, as follows:

"A court of equity or a court in the exercise of equitable jurisdiction will, as a general rule, in its discretion, order an allowance of counsel fees or, as it is sometimes said, allow costs as between solicitor and client to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a second successful suit for the preservation, protection, or increase of a common fund or of common property or who has created at his own expense, or brought into court, a fund in which others may share with him. The rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense." * * *

The rule, as well as the legal principles supporting the rule together with the limitations upon the rule, is considered at length in annotations appearing in 49 A.L.R. 1149, and 107 A.L.R. 749.

In Tulare County v. City of Dinuba, 205 Cal. 111, 270 P. 201, it was said:

"The underlying principle in all the cases, where one has been allowed compensation out of a common fund belonging to others for expenses incurred in services rendered on behalf of the common interest, is the principle of representation or agency. There must be a contract of employment expressly made or superimposed by the law upon the facts. Hand v. [Savannah & C.] Railway Co., 21 S.C. 162. This has been done where the moving party has sought to preserve a fund from waste and destruction arising from the neglect and misconduct of trustees. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. The fact that one may be benefited by an action brought by another is not of itself sufficient to justify a court in assessing costs against the one who also profits by said action. Some contractual relation or some equitable reason sufficient to support an allowance of costs must be shown to exist to justify a court of equity in making such assessment."

The agency principle was recognized on rehearing in Colley v. Sapp, 44 Okl. 16, 142 P. 989, 1193.

In Kellough v. Taylor, 189 Okl. 675, 119 P.2d 556, we said the rule that a court of equity may allow counsel fees to an attorney who has created a fund does not apply where there has been neither a creation, addition, nor protection of a "common fund"; and does not apply where the benefit is merely incidental.

The fact that other members of the class were represented by their own counsel has in some cases been treated as a strong or fatal objection to the allowance of counsel fees out of a common fund. 14 Am. Jur., Costs, § 75. Some courts have cautioned that the allowance of counsel fees from a fund is capable of great abuse and should be exercised with the most jealous caution in regard to the rights of litigants, lest thereby the administration of justice is brought into reproach. 14 Am.Jur., Costs, § 74, supra. Other factors having a bearing upon the right of recovery are considered in the annotations above mentioned.

The Ringwood Field in Major county was discovered about 1946, and was originally classified as an oil field. Subsequent production disclosed that it was really a gas field. The Oklahoma Corporation Commission took note of the waste of gas in the field in 1950 or 1951, and producers in the field began to look for a market for their gas. An agreement was worked out by some of the producers and Oklahoma Natural Gas Company whereby liquid hydrocarbons would be paid for, but there was no agreement to pay for the gas as such. Extensive litigation followed in State and Federal Courts, and before the Corporation Commission, in an effort to cancel or invalidate the contracts with Oklahoma Natural Gas Co. These efforts were unsuccessful.

Ted Fisher, plaintiff in this case, appeared as counsel in much of this litigation and acquired substantial technical and legal information concerning the field and the legal problems involved. Through this extensive litigation the theory began to evolve that the gas purchase contracts with Oklahoma Natural was actually causing waste in the field. Fisher, with others, presented the theory to the Conservation and Legal Department of the Corporation Commission and applications were filed before the Commission for appropriate relief.

Livingston Oil Co. was actively interested in this litigation and employed Paul Brown, of Oklahoma City, to assist in preparing for trial and in conducting the trial.

Extensive preparations were made for the trial, and Livingston Oil Company through its attorney, Paul Brown, assured Conservation Attorneys that Livingston would pay all expense of procuring necessary studies, exhibits, and expert testimony. In order to obtain all available information concerning the field a meeting of the operators in the field was held in Tulsa, Oklahoma, on or about December 10, 1958. Several Ringwood Field operators were present, together with petroleum engineers and consultants. Plaintiff, Fisher, was presented and was under written contract to represent about 43 royalty owners in the field on a contingent basis. Paul Brown was present and representing Livingston.

Paul Brown testified in the trial court, in the instant action, in part as follows:

"A. * * * the purpose of that meeting was to get the operators together, —it actually had a two-fold purpose; it was an effort to explain to the other operators in the field what we were attempting to do, and it was also an effort to assure them that so far as we were concerned that there would be no effort to collect any fees or costs or charges off of them, and the third purpose was the fact that we needed very vital information that only they could furnish. It was necessary to have that in order for the engineer to appropriately work.

\* \* \* \* \* \*

"A. There were several (representatives of working interest owners) there, I don't know, somewhere between fifteen and twenty-five there.

\* \* \* \* \* \*

"A. * * * I was on my feet a good deal in this meeting,—was talking a good deal, maybe more than I should have been. But I knew it was incumbent to show these people that we were not there to ask for a give-

me program, to get them to spend their money and their efforts for our use and benefit, so I went to particular odds and pains to explain to whoever was there that what we wanted was cooperation and information, and not money from them. I made that very clear to them. Fisher may have made the same remark, I am not sure as to just everything that happened."

Following the Tulsa meeting it appears that Ringwood Field operators furnished such information as was requested of them.

Four applications for relief were filed in the Corporation Commission; one by the Conservation Attorney of the State of Oklahoma; one by Ted Fisher's mineral owners; one by Stanley Coppock; and one by W. D. Greenshields.

At the trial before the Corporation Commission these four applications were consolidated for convenience and appearances were made for five or six of the Ringwood Field operators. The record of the trial discloses that Fisher and Brown were the most active participants. Paul Brown testified, in the instant action, that Superior Oil Company's attorney gave him valuable advice and counsel during the trial.

After several days before the Corporation Commission in presenting testimony a compromise settlement was reached between the "active" litigants. Oklahoma Natural agreed to pay 6¢ per MCF for gas, where it had been paying nothing. This agreement appears to have been approved by Fisher who represented some of the royalty owners, although they were not required to sign the agreement. It was required by Oklahoma Natural that the agreement be approved by 90% of the operating area in the field. It was a further requirement by Oklahoma Natural that all proceedings then pending in the Corporation Commission be dismissed.

During the time the compromise settlement between the operators and Oklahoma Natural was being considered, Fisher entered into a discussion with Livingston, of Livingston Oil Company, with reference to attorney fees and costs. Fisher suggested that a bill for costs and attorney fees should be presented to the producers who had not actively participated in the Corporation Commission litigation before the cases in the Corporation Commission should be settled. Livingston, however, was of the view that the compromise settlement with Oklahoma Natural should be completed as an "accomplished fact" before the submission of the bills for costs. The "Livingston view" prevailed and both actively participated in closing the compromise negotiations with Oklahoma Natural. Fisher, as required by Oklahoma Natural, dismissed his (royalty owner) clients' action which had been consolidated for trial with the other actions then pending before the Commission. Since Fisher and Livingston could not agree upon what Livingston considered to be a reasonable attorney fee, separate bills were submitted by Fisher for his attorney fee and Livingston for his costs. Voluntary contributions were not rewarding to Fisher or Livingston, and Fisher brought the instant action.

Plaintiff sought judgment in this action against those producers and royalty owners who did not "actively participate" by assisting in the hearing before the Corporation Commission. He prayed that Warren Petroleum Corporation and Oklahoma Natural Gas Company, as purchasers of the gas from the Ringwood Field at the increased rates be treated as "stake holders and distributors" of the proceeds from the sale of such gas, and that such stakeholders be required to pay over a percentage of such sales to plaintiff for such a period of time as equity and justice might require.

It is apparent that plaintiff's knowledge of the legal problems involved, and of the Ringwood Field, made his services of substantial value in the preparation and trial of the issues before the Corporation Commission. His clients, forty-three royalty owners, have paid him for services ren-

dered in their behalf pursuant to their contracts.

■ Plaintiff contends that the equitable rule of "allowance of costs as between solicitor and client" operates in Oklahoma. Fitzgerald v. Bass, 122 Okl. 140, 252 P. 54, 49 A.L.R. 1141; Kellough v. Taylor, 189 Okl. 675, 119 P.2d 556; and State ex rel. Board of County Commissioners of Harmon County v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797.

The "rule" has been applied in Oklahoma where a "common fund" has been created or protected. However, in Kellough v. Taylor, supra, we stated in the body of the opinion that the rule does not apply where there has been neither a creation, addition, or protection of a common fund. We have found no case, or definition, which defines the term "common fund". Words and Phrases cites the case of Bartlett v. Battema, 300 Mich. 262, 1 N.W.2d 534, wherein plaintiffs purchased the right to participate in a well being drilled. Absent a showing that plaintiffs were expected to pay additional assessments for completion of the well being drilled, or promise of refund, the court held that the money received from sale of interests was not a "common fund", and plaintiffs could not compel an accounting by defendants as to money paid for such interests. While the Michigan case does not define the term "common fund", it is apparent that plaintiffs had received what they had paid for and they had no interest in the funds accumulated for drilling purposes. Black's Law Dictionary gives legal definitions of the word "common", but does not define "common fund". Generally speaking, however, we think "common fund" would be a fund which is owned by more than one person so that each person would own or have an interest in the entire fund. There is no common ownership of the lands and royalties in the Ringwood Field, or in the production or proceeds therefrom; no "common fund" was created by any action of the Corporation Commission; and the compromise settlements did not produce a common fund. Plaintiff seeks to have a special fund created in the hands of the purchasers from which his claim may be paid. Thus it seems to us that the efforts of the plaintiff, acting with others, did not produce a fund to be shared in common, but did produce benefits which went directly to each property owner.

Plaintiff further contends that "the principle of the rule of 'allowance of costs as between solicitor and client' should be applied in this case."

Much could be said in recognition of the contribution which plaintiff made to the action and results obtained out of the case before the Corporation Commission. However, there was testimony from attorney Paul Brown that the meeting in Tulsa, Oklahoma, was called to enlist the help of the operators and to assure them that there would be no effort to collect any fees or costs or charges from them. Plaintiff testified that he did not discuss fees with the defendants in this case, but did send them a demand for an equitable fee after the case was settled. In reference to the operators' meeting in Tulsa he testified in part as follows:

"Q. Well I will ask you Mr. Fisher, if they (the operators) were not expressly told that there would be no obligations on the part of any of them?

"A. Not by me.

"Q. Well I will ask you if Mr. Paul Brown didn't expressly make such a statement to them?

"A. If he did, I have no such recollection.

\*   \*   \*   \*   \*   \*

"Q. But you won't say that that statement was not made, will you, Mr. Fisher?

"A. \* \* \* I don't recall anything of that kind.

\*   \*   \*   \*   \*   \*

"A. My best recollection is that there was no such statement made."

It is argued by the plaintiff that there is no necessity for an actual contract between an attorney and those he seeks to charge for his services, and urges that it is sufficient that those not actually contracting with the attorney accept the benefit of his services "as was done in this case." In Tulare County v. City of Dinuba, 205 Cal. 111, 270 P. 201, supra, it is said there must be a contract of employment expressly made or superimposed by the law upon the facts. In the instant case it seems doubtful if a contract of employment may be superimposed by the law upon the facts here presented.

In the actions or applications filed in the Corporation Commission it was represented that the gas produced from the Ringwood Field was worth 11¢ per MCF. In compromise negotiations Oklahoma Natural offered 5½¢ per MCF. Livingston refused to settle for less than 6¢ per MCF, and it was finally agreed that 6¢ per MCF would be paid, conditioned that 90% of the operators in the field would approve. The compromise settlement at 6¢ per MCF was approved by the defendant operators without any knowledge or suggestion that the 6¢ per MCF would be surcharged with attorneys fees and costs. When the defendant operators agreed to compromise for 6¢ per MCF they did not agree to compromise for less than that sum. They were urged, with plaintiff's knowledge, to accept 6¢ per MCF; not 6¢ less costs and attorney fees. Under these circumstances it would be more accurate to say that these defendants accepted the benefits, together with a gift of plaintiff's legal services and Livingston's costs.

The defendant royalty owners invite our attention to expressions from this court, and others, to the effect that it is the duty of an oil and gas lessee to protect the lessor's royalty interest in marketing the production from the lease, and that there is no duty upon the lessor. Townsend v. Creekmore-Rooney Company, Okl., 332 P.2d 35; Application of Moran, 201 Okl. 43, 200 P.2d

758; Greenshields v. Warren Petroleum Corporation, 10 Cir., 248 F.2d 61; 86 A.L.R. at page 725; and 71 A.L.R.2d at page 1219. The royalty owners conclude that if an award of attorney fees is to be made in this case that it should be borne by the defendant lessee-producers and not by the defendant royalty owners. We are in agreement with this conclusion.

We are of the view that claims of this nature should stand or fall upon the merits of each individual case, and we are loath to make any pronouncements herein that would stand as a bar to future equitable and meritorious claims. We have carefully reviewed the record in this case and upon consideration of the whole record we are unable to say that the judgment of the trial court is against the clear weight of the evidence. The judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS and IRWIN, JJ., concur.